If you're here for that, you'll be heard. Is it Mr. Conop? Correct, Your Honor. Thank you. The primary question presented by this appeal is whether Epic Systems v. Lewis directs that arbitration be conducted and ordered by the bankruptcy court in this case. We submit that it does. Now, the issue obviously before the court, it's understandable, does Epic Systems impliedly overrule National Gypsum? And the difficulty we see with National Gypsum is the discretionary aspect. We think the Supreme Court clearly indicated that in Epic Systems that there must be a clear and manifest intent on the part of Congress to override the Federal Arbitration Act with another statute. We have yet to see any argument or indication from the appellee in this case that such a clear and manifest intent exists. Counsel, you said the question is whether in Epic Systems impliedly overruled. That's the argument that we're facing from the appellee. Right. Now, it's under our precedence, and correct me if I'm wrong, it's not enough to impliedly overrule, right? It has to be unequivocal. Well, the — Or is that not right? The Hagen case, I think, discusses the standard for implicit overruling of an existing panel precedent. And we believe that the pronouncement in Epic satisfies that standard standing alone. It doesn't call or it doesn't permit for discretionary determination by the lower court. If it did, the lower court could find, for example, that indeed the inconsistency or the difficulty of resolving the Federal Arbitration Act with the subsequent Federal statute justified overriding the FAA. But nonetheless, the lower court could decide to order arbitration. Didn't our case, our In re Gibson case, rely on McMahon? The Supreme Court case that was cited favorably in Epic Systems? It relied on McMahon. And I concede that Epic Systems did not overrule McMahon. That wasn't presented in the case itself. It did note, and I think very clearly, that at least one prong of McMahon is rejected, and that is that you can imply or find congressional intent through legislative history. The majority pretty clearly spoke and said that's not the law. The law is in the statute, and we have to read the statute for what it is. Your argument to us is you accept McMahon, but you don't accept the extension of it in Gandy and Gibson. That is correct, Your Honor. I can't take away the words from McMahon. They stand. That being said, no subsequent court has ever relied on, other than Gibson, perhaps, in determining that there is this discretionary standard. No Supreme Court case has ever addressed the two ---- There have been lower courts since Epic, and none of them have said what you're urging. They haven't ---- well, the Sixth Circuit. I apologize because we quote it as being a Seventh Circuit opinion in our briefing. Oh, Gaffins? Gaffers? The Gaffers. Yeah. Yeah. I was looking. The citation was difficult, but that's an FLSA case. That's true. And so, I mean, the primary argument against your position is that Congress did something quite unique, and the text and structure are sufficient clues by creating an entire court system and giving powers that aren't given to arbitrators. It is unlike the argument that there is an irreconcilable conflict. That is the argument that's advanced by the appellee. But there is no irreconcilable conflict. Indeed, in the posture that this case is in, that conflict is easily resolved. There's a bilateral agreement between Ms. Henry and my client to arbitrate any matter, any controversy relating to the underlying indebtedness, and that is what this is. Okay. But that language is going to be important. And I've gone in the wrong direction with it, with the wholly groundless exception. But the agreement your client had with the Wells Fargo predecessor said any claim or controversy, not any matter. Any claim or controversy. So we've got some scholarship, is it Professor Westbrook and the amici, who say this isn't a claim or controversy between those two litigants. This is the district court's fresh start order. With utmost respect to Professor Westbrook, it is a controversy. It relates to the note. Appellee contends that the note is discharged. The court seems to imply to have gotten over the predicate steps it must take to come to that conclusion. It entered a discharge order, no question. However, for purposes of resolving this case, we have to go first to the exceptions to discharge under 523A. Congress established 16 exceptions with many subparts to the discharge. We have to determine whether or not our case, our note, falls within the scope of those exceptions. We next turn to whether or not having responded to a letter sent by the appellee's lawyer days after she was discharged constitutes an attempt to collect a discharge debt. Then we have to go to the question just recently addressed by the Supreme Court in the Taggart case, well, did we have an objectively unreasonable position in responding to that letter? Those questions are all susceptible to an arbitrator's determination. Well, but the case you cite of ours for that, the only case you cite for the proposition that arbitrators often address injunctive-related issues is McVeigh. Yes. And there the order that's injunctive that the arbitrator entered wasn't in an IP case. Right? The arbitrator doesn't have to enter injunctive relief. Injunctive relief is already there by statute. You're saying Judge Jones's injunctive relief is there. It's there as a matter of law in 524 of the code. The question is whether that injunction ultimately has been violated, and if so, what the penalty will be. It's a civil contempt penalty. That's all he can do. But why am I not right that that's assigning to the arbitrator the authority to decide whether to enforce Judge Jones's injunction? I would differ a bit, Your Honor, because, as I said, there are these three predicate questions that must be determined. The exceptions to discharge, as suggested by Tennessee Student Assistance v. Hood and by the Espinoza cases, are self-executing. Okay? That has to be determined and is the burden of the appellee to establish that her debt is not within the exceptions to discharge. That can be determined by an arbitrator. Gwen, I'll stop asking too many questions. Two questions. You cited Trevino as a supportive authority. Yeah, we did cite Trevino, and I think that's an interesting— But Trevino was a discretion. It applied national gypsum, correct? That's right. Your argument to us is there is no discretion. That is my argument, but if, to the extent national gypsum survives Epic, the proper way to address this would be the way that Judge Jones's fellow jurist in the Southern District approached it. That is, he combed the statute. But I thought Judge Jones ruled in the alternative. One, I don't think this can ever go to an arbitrator, but if it could, applying gypsum — I may be wrong. Applying gypsum, I wouldn't use my discretion and send it. I — You don't read it that way? I don't read it that way. It was essentially national gypsum says I have the discretion to deny it. He doesn't go through an analysis to deal with the basic application of either Epic or the three-part test that was set forth in national gypsum, which the Fifth Circuit indicated was applicable if you were trying to adjudicate purely federal rights by statute. That would have to show that the — let me get the language specifically here. I've asked enough questions. You're well prepared. Go ahead and present the rest of your argument. All right. Essentially, it is that, Your Honor. Judge Jones, with all the greatest respect, did not even follow the standard of national gypsum in concluding that this case is not arbitrable. The appellee did not contest the application of Section 2 of the FAA. She did not set that up as being an excuse for arbitration. She essentially concedes that this is a valid arbitration agreement in her note. She simply wishes to be excused from that in order to pursue a putative class action in bankruptcy court. She could not do that in arbitration. Stolt-Nielsen, Lamps Plus, direct that this is not an available forum or remedy. She cannot serve as a class representative in a collective action under arbitration. That is a right that my client bargained for with Ms. Henry. The failure to honor that arbitration agreement places my client in an untenable position of having to defend in bankruptcy court, a matter that I will point out is before this court in the Crocker v. Navient case. It puts us at an extreme disadvantage, and we believe that the arbitration agreement must be honored. That is our position. We believe that the aspects, and I don't know if you are comfortable with the issues arising out of the national gypsum test, but I would point out that in the posture of this case, it is a closed Chapter 13. The centralized resolution of purely bankruptcy disputes is not at issue. This is only one dispute. It can be adjudicated by an arbitrator. There's no reason to believe that an arbitrator would be unable to adjudicate that issue. There is no need to protect creditors in reorganizing debtors from piecemeal litigation. This is one case. That's all we have. So this is on the framework, accepting that national gypsum — Accepting that national gypsum is still good law. Again, you know the intricacies better than I do. What's the best case where we've reversed a district court — I mean, a bankruptcy judge's exercise of discretion? I'm sorry. What's the best case where we have — if we don't decide the vast or epic decision, but this is just did Judge Jones abuse his discretion applying national gypsum? If we're on that frame, that is, in terms of the best case, I'm unable to cite you to such a case. Merely to argue that having failed to address those standards, to me it's prima facie an abuse of discretion because none of the factors really exist. And I think one additional thing that we must recognize, and it was cited significantly by Judge Jones, and that is the sanctity of his own order. We don't dispute the importance of a bankruptcy court discharge order. But we would point out it's significantly different from the order that was under consideration in national gypsum, which was entered in the early stages of a 12-year proceeding involving a mass tort resolution mechanism to satisfy the mesothelioma and cancer issues arising from use of gypsum products. The bankruptcy court's discharge order is a form. It's prescribed as Form B-318W in the standard bankruptcy forms. Bankruptcy Rule 4004E directs that bankruptcy courts shall conform to that standard form. And another issue in terms of the enforcement of that order and the importance of preserving Judge Jones' ability to enforce that order is belied by Bankruptcy Rule 4004F, which permits that order to be docketed in any judicial district in the United States and enforced in that district. So Congress has recognized that this order can be enforced in other fora. It can be enforced by other parties. And we submit that that refutes any suggestion that there is a congressional intent that would preserve this case before the bankruptcy court. Thank you. Thank you, Your Honor. You have rebuttal time. Mr. Burge? Good morning, Your Honors. Jason Burge. I have Lynn Swanson here at council table with me on behalf of the plaintiff in this matter, Stephanie Henry. There are two points I'm going to emphasize in this argument, and I don't think I heard anything in the appellant's argument that makes me change them. And the first is that this Court in National Gypsum really resolved the issue in this appeal. If this panel follows National Gypsum, it will have to affirm the bankruptcy court's ruling. And I think your question got right, too, Judge Higginson. To overrule National Gypsum, this panel would have to find either that the Supreme Court's decision in Epic unequivocally overrules National Gypsum or establishes a question of law that is irreconcilable with National Gypsum. And Epic Systems, which cites the McMahon decision with approval, is simply not that kind of case. And second, this is a case about violations of a court order. Wells Fargo has not cited a single case, nor am I aware of one, where parties were compelled to arbitrate violations of a court order. I think that's a critical point, because violation of a court order and the contempt proceedings that followed, including the contempt we're seeking in this case, it's not merely a private matter. The Court has an interest in that matter as well. And our position, and I think the National Gypsum position, is that parties are not to enforce its own orders. The bankruptcy court has to have the discretion to decide whether it's going to enforce that order or whether it believes a third party can enforce that order. Roberts. So he's got a layered argument and you've got a layered answer. You would like us to write an opinion that says there is no discretion when it comes to a discharge order and whether it's enforceable that can never be assigned. No. I disagree.  I think there is definitely discretion. I think the bankruptcy court, having entered the order, has the undisputed power to enforce it, and the bankruptcy court has the discretion. You're not embracing the amici position. I'm not embracing the amici position. And I actually don't think Trevino was improperly decided. I think the whole point here is it's about discretion. So Trevino is exactly right, but Judge Rodriguez did an elaborate analysis of the National Gypsum factors. He did. There isn't here – I mean, there isn't much here to look at. Why couldn't an arbitrator just look at this Education Loan IRS Code provision and it's in or out? I disagree. I think Judge Jones did an evaluation of both the McMahon and the National Gypsum counters, and he focused on that third point in National Gypsum. I'm going to interrupt only because you're good. If he hadn't, if we read this to be can't assign it, you then, your position is that would be legal error. Well, I believe he has to reach the discretion and he has to exercise his discretion, and I believe he clearly did so. So you are in agreement with opposing counsel that it would be clarifying and helpful if we said that the amici positions, some of the scholarship, that these can't be given to arbitrators is incorrect. I don't believe that's the law. Okay. Go ahead. Keep going. I believe National Gypsum creates a discretionary standard. Yes. And I think Judge Jones exercised that discretion. I think if you look at National Gypsum, it's a test which at this point has been embraced by, I want to say, five to six to seven circuits. There's the Second Circuit in Anderson just last year, the Fourth Circuit in the Fourth Circuit in 2005, the Ninth Circuit more recently. This has become the law. It's the same law in the Third Circuit that when you have a core proceeding with rights derived exclusively from the bankruptcy code, the bankruptcy court has discretion to assess whether arbitration would be consistent with the purpose of the code, and one of the three National Gypsum factors, which Jones specifically cited, is the undisputed power of a bankruptcy court to enforce its own orders. And so Chief Judge Jones followed National Gypsum. He recognized he had that discretion, and because specifically Henry's claims are not in any way derivative of her pre-petition contractual relationship with the defendant, but rather relate to defendant's post-discharge conduct. And if you look at the issues that Tom just raised where he said these are the three issues that are going to have to be decided before we get to the discharge violation, they're all statutory issues of the bankruptcy code. It's about 523A8 of the bankruptcy code. It's about 524 of the bankruptcy code. All those issues are bankruptcy issues that the bankruptcy court is uniquely prepared to decide. And in their brief, Wells Fargo suggests, well, there's a tax law issue. We're going to, you know, there might be mandatory withdrawal because we've got to decide what's an eligible school. I'd submit that is a complete red herring because if you take a look at this class, and Ms. Henry specifically herself, she attended the ultrasound diagnostic school. That's a trade school. It is not a Title IV eligible school. And if you look, and we laid this out explicitly in our brief, in order to have a qualified education loan, you have to go to an eligible institution. The eligible institution, that's a list maintained by the Department of Education. The ultrasound diagnostic school is not on that list. In fact, we've defined the class in this case to only include schools that are not on that list. And you both, again, can get to levels factually that I'm not briefed on or prepared, but maybe then step back for me and discuss the, it's the sixth or the eighth case under the Gaffer's decision. Well, the Gaffer's decision was an FLSA case. It was looking at literally the exact same issue that had been decided by Epic Systems. Does the NLRA and the language from the National Labor Relations Act affect your ability to bring an action under the FLSA? What the Gaffer's decision said is it followed the Supreme Court and said, no, it doesn't reach there. But I don't believe the Gaffer's decision said the McMahon test is dead. All you can look at now is text. And frankly, I think if you look at Epic Systems, Epic Systems didn't say that. The court in Epic Systems, it didn't just look at the text. It looked at the, quote, broader structure of the NLRA. It looked at the statutory context. It made a big deal out of the fact that the NLRA has no provisions providing for class action treatment of FLSA claims. It doesn't give you any guidance. Well, the great thing we have here is we have the bankruptcy code. We have the bankruptcy rules of procedure. I've got extensive guidance as to how this case should proceed. I know exactly, you know, Rule 23 under Rule 7023 of the bankruptcy code, Rule 23 applies in adversary proceedings. I've got a full set of procedures. I've got an entire court system set up to deal with these kind of claims. That's completely different than Epic Systems. So the text and structure of the bankruptcy code you're saying is itself irreconcilable? It's irreconcilable with the idea of mandatory arbitration. That's kind of the point that I think is really the heart of the conflict here. We're not saying that you can never have arbitration of claims that have something to do with bankruptcy. I think, of course, you can. There are numerous cases cited where parties or where courts have applied the national gypsum standard, but said, say, with a non-court proceeding, you can have an arbitration of that, even with a court proceeding. The court might decide, like Hill did in the Second Circuit, that it's a stay issue, but we're past the arbitration. I mean, we're past the close of the bankruptcy. The stay is no longer applicable. That could be arbitration. In Trevino, there was a discharge order, pretty core, and yet Judge Rodriguez said … And he exercised his discretion to say in this situation, particularly where they have asserted a lot of non-bankruptcy claims, there were TILA claims, there were other State law claims, he said, if I look at the entirety of this suit, I think this could be handled elsewhere. In this case, we only have core bankruptcy issues. Our only issue is, were these loans discharged, how does that get handled under 524? Those are all the claims that have been asserted in this case. Have … to your knowledge, have we reversed a district court's … I mean, sorry, a bankruptcy judge's discretion? No. I'm not aware of a single case that has come out. And, in fact, what this Court has done is in Inouye-Gandhi, five years after National Gypsum, they affirmed the exact same ruling as National Gypsum. It was a different presentation. It was about fraudulent transfer claims rather than discharge violations. But Judge King was on the panel, and we affirmed that National Gypsum holding. I think I counted there are 84 courts' decisions of this circuit following National Gypsum. You'd be hard-pressed to find a better, more established precedent for stare decisis than National Gypsum. And I think if you look at Epic Systems, I think … I've made the point that Epic Systems, I don't think you can read that case to overrule McMahon. And I think I heard my opposing counsel concede that he doesn't believe Epic Systems overruled McMahon. He said it took out one of the legs of McMahon with respect to looking at legislative history. Well, and I don't think it's surprising, given what we know about the Supreme Court, to discover that they're not a fan of looking at legislative history. But I think what's important here is that National Gypsum didn't rely on legislative history, and we don't rely on legislative history. We rely on that inherent conflict test, the third part of McMahon. And I believe that Epic Systems itself looked at that third part of McMahon. And so I don't think the McMahon test, all three legs, has been overturned. But certainly, I don't think there's a suggestion in Epic Systems that they've overturned that inherent conflict. Now, I will concede that the Supreme Court has not yet found a statute that inherently conflicts with the FAA, but the Supreme Court has also never dealt with the interaction between the Bankruptcy Code and the FAA. And I would submit that the Bankruptcy Code is substantially different in the structure than the statute. Are you aware of any en banc activity or any cert petitions? I'm aware of the Anderson case where cert was denied. And so Anderson came out before Epic Systems. Anderson, they sought cert. Epic Systems came out. The cert petitions in Anderson extensively cited Epic Systems. And the Supreme Court denied cert. I would recognize that's not a precedential opinion, but you would expect that if the Supreme Court thought that Epic Systems overruled Gypsum, they would have just GVR'd and said, you know, Second Circuit, go take a look at this in light of Epic Systems. They did not. So I think you can certainly read into that. The Supreme Court didn't think this was a laydown, obvious overruling. They didn't, to put it in the language of the rule of orderliness, I don't think the Supreme Court looked at the cert petition in Anderson and said, our rule of law in Epic Systems is irreconcilable with Anderson. All they did was deny cert. And I think in thinking about this case, I think it's important to focus on that If you look at the factual legal context in Epic, you're talking about a statutory claim under the Fair Labor Standards Act and how that's going to be dealt with. I just think that's fundamentally different than when you're talking about a court order and the undisputed power of all federal courts, not just bankruptcy courts, to be able to enforce their own orders. What Wells Fargo is seeking to do here is to say parties can contract before any dispute, before any bankruptcy, to take away the power of the court to enforce the orders that come through the bankruptcy system. And if you think logically about what effect that's going to have about bankruptcy, I think that has the potential to undermine the bankruptcy system entirely. I think if you ask my opposing counsel, I think that bankruptcy courts never have discretion to avoid arbitration clauses. If you had that rule, the bankruptcy proceeding would stop because essentially so many of these consumer debt contracts are going to have arbitration agreements, how are you going to have an effective bankruptcy process if every single debt gets pulled out of the bankruptcy process to be dealt with in an individualized arbitration? That's not a functional system. That's an inherent conflict. And I think if you look at the very facts of this case, of Stephanie Henry and her Chapter 13 proceeding, you can see the importance of the bankruptcy court being able to enforce its own orders. Because this wasn't a Chapter 7 bankruptcy. This was Chapter 13. Ms. Henry had to meet with the court and the trustee. She had to develop a plan. She had to get that plan approved by the court. And then she spent five years paying down the debts in that plan before the court decided she had complied with the plan and granted her a discharge. What Wells Fargo is saying is that despite the fact that Ms. Henry spent five years of her life complying with court directives in order to get a discharge, she's not entitled to have the court enforce that discharge. She has to take that discharge to a private arbitrator who knows nothing about what she's gone through in the plan to decide whether those debts have been discharged. And in a related case in Crocker, when the same issue came up, Judge Jones himself said, this goes to the very heart of the integrity of the bankruptcy process itself. If the conduct that is alleged here turns out to be true, how can folks come in here and ask for a discharge and have confidence? And some of these people spend years. Chapter 13, they spend five years trying to get a discharge. And if they can't have confidence, it works. Roberts. And I should remember, is Crocker pending before us? Crocker is. It was argued in February. The case number is, I wrote it down, it's 18-2254. But you, again, help me. Is the central issue there that would be determinative here? The central issue there was, there were two issues. One was really what I would consider to be the merits of this case, although Wells Fargo might disagree. It was the issue of dischargeability of trade school loans under 523-8882. That's the specific language about funds received as an educational benefit, scholarship or stipend. So that really, I think, that could be determinative here. It could be of the case, but not of the issue presented. Not of this arbitration issue at all. Okay, that's what I wanted to hear. Just the merits of the case. And then there was a jurisdictional issue about the bankruptcy court's ability to rule on bankruptcy orders, discharge orders from other districts, which is tangentially related, but I don't think determinative here. There was an arbitration issue in Crocker, but Navient chose not to appeal it, so that issue never came before this court. And I think the final point I really want to make is that I think it's worthwhile to look at Wells Fargo's own conduct in this case when we think about arbitration and bankruptcy. Because I don't think Wells Fargo is really here in good faith without some dirt on their hands. Because Wells Fargo filed a proof of claim in Ms. Henry's bankruptcy. If you look at the case law, we cited Langenkamp, Grand Financiera, they submitted to the bankruptcy court's jurisdiction for this very debt. They received payments in the Chapter 13 plan. And then having submitted to the bankruptcy court's jurisdiction, having received those payments, when the time comes to determine whether that debt is discharged, they want to say, well, now I'm not subject to the bankruptcy court anymore. Now you've got to take these issues to a separate arbitrator. Because I liked what I got when I was getting payments from the Chapter 13 plan, but I might not like what I'm going to get now, so now I want arbitration. If you look at that Langenkamp case where the court said, once you submit your right to a jury trial, I think similarly it's not hard to find once you've submitted your claim and accepted payments under the plan, at this point you can't assert that you get to arbitrate these issues. And certainly not if you wait five years after you get many payments to do it. I just don't think there's any equity in that position at all. If Wells Fargo really wanted arbitration of these claims, it should have asserted that at an earlier point in the process, not once it's already taken advantage of the Chapter 13 plan and received those payments. And that's really why I think when you're thinking about claims and specifically bankruptcy-related claims relating to assertions of the bankruptcy process, once you participate in the process, once you're in the bankruptcy, that bankruptcy court's got to have discretion to decide, is this something I decide or is this something that can go to an arbitrator? And that's what Judge Jones did here. And so what we would submit the court should do is reaffirm the National Gypsum Standard. I think it's discretionary. I don't think it's absolute, Judge Higginson. And affirm that Judge Jones properly exercised this discretion here. Thank you, Counsel. Thank you, Your Honor. I want to address the issue with Grand Financiera and the filing of the proof of claim. It should be noted that Ms. Henry did not object to the proof of claim. The proof of claim is prima facie evidence of its validity and extent. Ms. Henry could have objected to that claim during the course of her bankruptcy. She did not. The bankruptcy case is closed. All Grand Financiera suggests is that in the case of the filing of a proof of claim, it enables the debtor to set up a counterclaim. This is not that case. Ms. Henry is not contesting that she executed the note. Ms. Henry is not contesting that she owes amounts under the note but for the discharge. And we're not suggesting that we're trying to set aside the discharge. The discharge is the discharge. It just doesn't apply to our debt under 523A8. And we want to present that to an arbitrator as we contract it. With respect to other adjudicators for these issues, I go back again to Taggart, which suggested strongly or basically stated that any 523A claim or argument about exception to the discharge injunction is adjudicable in state courts. That was also affirmed in the Lopez case that we cite by Judge Jones' colleague, Judge Isger. So it's very clear that you could present this issue of dischargeability to a state court judge. Why not to an arbitrator? I have another issue about the presentation of the sanctity of the court's order. This is pretty much undercut by the fact that Ms. Henry's pleading seeks to have Judge Jones adjudicate the discharge orders of countless debtors in the other 97 judicial districts. I think that belies the fact that this order is a form order. It means what it is. And we're not here to take away Ms. Henry's discharge. That discharge was granted. What we're here to argue is that this debt fell within the 523A8 exceptions. Do you agree we shouldn't hold it? No reason to hold this for Crocker? There is no reason to hold this for Crocker. And then if you prevail? In fact, I'm sorry, Judge. In Crocker, Judge Jones also rejected an arbitration motion by the — by Navient before EPIC was adjudicated. So it was not preserved for appeal. I don't want to suggest that they can't re-raise it in light of EPIC, but it was not presented to this Court. And the only other one is if you were to prevail, that we would overrule — we would state that EPIC overruled cases subsequent to that, like Gandy, would also go — fall. I believe Gandy would have to fall. And it is an abuse of discretion for the simple reason this isn't a legal issue. And if there is an incorrect reading of EPIC, it is an abuse of discretion. Right. And really, unless the Court has other questions, I think we've established our position. Thank you both. I will just say in prerogative as presiding judge, it is a pleasure when lawyers come as prepared and knowledgeable, and especially as collegial on a — clearly, you're on a first-name basis. And I think you both would have fun arguing EPIC in the Supreme Court. All right. We'll take a short recess before we hear our final case.